IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON VARGAS | **:** | No. 2:15-cv-06741 |
| | **:** | |
| *Plaintiff,* | **:** | JURY TRIAL DEMANDED |
| | **:** | |
| COMPUTER SCIENCES | **:** | |
| CORPORATION | **:** | |
| | **:** | |
| *Defendant.* | **:** | |

**PLAINTIFF'S STATEMENT OF MATERIAL AND DISPUTED FACTS[1]**

Pursuant to the Second Amended Scheduling Order, Plaintiff, Sharon Vargas ("Ms. Vargas"), submits the following Statement of Material and Disputed Facts.[2]

**I.      Ms. Vargas' Military Service.**

1.      Ms. Vargas enlisted in the United States Army in 1972 and served until about 1995. JA 29, 376, 496. Her military service includes substantial experience in areas including but not limited to recruiting, counseling and managing enlistees, and strategic operations. JA 31. Substantially all of Ms. Vargas' military experience involved or was in some way related to human resources. JA 31.[3]

2.      During her military career, Ms. Vargas was awarded several Medals in recognition of her accomplishments and service, and was Honorably Discharged with the rank of Master Sergeant. JA 32, 40, 376.

**II.      Ms. Vargas' Employment With Defendant.**

3.      On or about February 14, 2011. Ms. Vargas was hired by AppLabs Technologies Private Limited ("AppLabs") as Assistant Vice President, Human Resources, JA 65-67, 75, 379.[4]

---

[1] Plaintiff's Complaint includes claims for violations of the Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Americans With Disabilities Act ("ADA") and the Uniformed Services Employment and Re-Employment Rights Act ("USERRA"). Plaintiff's Title VII, ADEA and ADA claims have been dismissed. *See* Docket Nos. 16 and 24. In their Motion for Summary Judgment, Defendant moved for Judgement with respect to Plaintiff's remaining USERRA claims, *i.e.*, discrimination and retaliation. Plaintiff intends to move forward at trial only with respect to her claim of retaliation under the USERRA. Accordingly, Plaintiff will herein only present disputed and undisputed facts that are relevant to her retaliation claim.

[2] Pursuant to the Court's April 18, 2017 Scheduling Order, Plaintiff is separately submitting a response to Defendant's Statement of Facts.

[3] Pursuant to the Court's April 18, 2017 Scheduling Order, Plaintiff is submitting herewith an addendum to the Joint Appendix. Throughout this Statement of Facts, as well as throughout Plaintiff's Memorandum of Law, reference to the Joint Appendix will be designated as "JA."

[4] As discussed in greater detail below, AppLabs was subsequently purchased by Defendant.

4.      In her capacity as Assistant Vice President, Human Resources of AppLabs, Ms. Vargas was responsible for overseeing all human resources functions, global mobilization, travel and housing, and reported directly to Sashi Reddi ("Mr. Reddi"), AppLabs' founder. JA 76-78, 80.

### A.    Defendant's Purchase and Integration of AppLabs.

5.       On September 14, 2011 Computer Sciences Corporation ("Defendant") acquired AppLabs. JA 68, 70, 103, 449. At that time, AppLabs became a subsidiary of Defendant. JA 103.

6.      From September 14, 2011 until March 31, 2013, AppLabs continued to operate as an independent entity. JA 104. During this time, Ms. Vargas continued to be responsible for overseeing all human resources functions at AppLabs. JA 104, 449.

7.      In or around late 2012 or early 2013, Defendant began the process of formally integrating AppLabs into Defendant, thereby eliminating AppLabs as a stand-alone entity. JA 119, 449-50, 525. It was anticipated that the integration would be complete by March 31, 2013. JA 118.

8.      Shortly after Defendant purchased AppLabs, Ms. Vargas discussed the status of her employment with Rolfe Schroeder ("Mr. Schroeder"), who identified himself as the individual who would be working with AppLabs employees with respect to their integration into Defendant. JA 110. Mr. Schroeder specifically advised Ms. Vargas that she had a position within Defendant going forward. JA 110, 143-144.

9.      With respect to her continued employment with Defendant, prior to being advised that she was being laid off, Ms. Vargas was advised that she: 1) would have a position within Defendant's Global Mobilization department; 2) that she had been requested to become a member of Sashi Reddi's "team" within Defendant; and 3) that she could have been picked up for other positions within Defendant following the completion of the integration of AppLabs into Defendant. JA 98, 106, 108 195.

10.     As further indication that Defendant intended to retain Ms. Vargas as an employee following the integration, she was required to submit an application for employment with Defendant on February 18, 2013 (during the integration). JA 158-60, 380-84.[5]

---

[5] The timing of this application is particularly relevant where, as discussed in greater detail, *infra*, Defendant claims that the decision to separate Ms. Vargas from employment was made **before** the date on which she submitted the subject application.

### B.      *Defendant Implements a Delayering Process, Which Includes A Significant Reduction in Force.*

11.      In or around late 2012 and early, 2013, Defendant began a company-wide reorganization, which included "delayering" its management structure and a reduction in force. JA 184-85, 450, 524-25.[6]

12.      In connection with the reorganization and delayering, Defendant implemented a job mapping process, wherein former AppLabs employees were required to "map" their AppLabs job title to the most similar job title within Defendant. JA 174.

13.      Defendant claims that as a result of the job mapping process, it was determined that Ms. Vargas' position would be redundant because AppLabs would no longer exist as an independent entity. JA 442-43, 451.

14.      In connection with the delayering process, Defendant created a "talent pool," which included employees who were selected for removal, but who could potentially be placed into a different position during the integration process. JA 440.

15.      Ms. Vargas was placed in the talent pool along with other employees who were considered "Layer 4 employees." JA 441.

16.      Defendant claims that the decision to eliminate **all** Layer 4 employees, including Ms. Vargas, was made in Mid-November, 2012.[7]

17.      Defendant claims that individuals who were selected for elimination would be ineligible for rehire for a year following their discharge. JA 451.

### III.     Upon Learning of the Delayering Process, Ms. Vargas Began to Engage in a Pattern of Protected Activity With Respect to Her Status as a Veteran.

18.      In or around late, 2012 Ms. Vargas learned of the fact that Defendant would be undergoing a delayering process that would result in a reduction in force. JA 184.

19.       Within a close temporal proximity of learning that Defendant was going to be implementing a delayering process, and the inevitable reduction in force related thereto, Ms. Vargas began inquiring as to whether her protected status as a veteran had been considered with respect to the delayering process and her continued employment with Defendant. JA 184, 188, 291-93, 497, 542.

---

[6] Specifically, and as discussed in greater detail, *infra*, Defendant claims that the decision to separate Ms. Vargas from employment was made in October, 2012, **before** the delayering process and reduction in force.

[7] *See* Note 4, *Id.*

20.     Specifically, Ms. Vargas had genuine concerns as to whether Defendant was in compliance with various federal statutes and regulations as it relates to her status as a Veteran of United States Army. JA 188, 192-93, 205, 291, 497, 542.

21.     Up to and including her last day of employment, Ms. Vargas continued to voice her concerns related to her veteran status and whether Defendant had fully complied with their obligations regarding same. JA 194-95, 198, 202, 204, 210-11, 218, 225, 227-30, 291, 401, 402, 404, 407, 410-11, 542.

22.     Ms. Vargas' complaint's and inquiries included specific reference to Federal statutes. JA 225, 410-411.

23.     Defendant did not engage in any meaningful investigation into Ms. Vargas' complaints or inquiries. For example:

- Defendant's management-level employees, including Rich Taylor ("Mr. Taylor") expressly advised Ms. Vargas that despite that fact that she is a veteran, she did not qualify for protected status. JA 192-193. In advising Ms. Vargas of same, Mr. Taylor cited a government program upon which Ms. Vargas was not even basing her inquiry. JA 192-93.
- Defendant repeatedly advised Ms. Vargas that they did not have any further information with respect to her concerns and complaints. JA 202, 219, 401.

## IV.   Ms. Vargas' Separation from Employment and Defendant's Subsequent Conduct.

24.     Defendant claims that the decision to separate Ms. Vargas from employment was made by Archana Singh ("Ms. Singh") on about October 19, 2012. JA 442-43.

25.     Defendant also claims that the decision to terminate Ms. Vargas was not made until November, 2012, at which point it was decided to eliminate the entire talent pool. JA 441.

26.     Nonetheless, Defendant claims that Ms. Vargas was not formally removed from her position at the time the talent pool was eliminated because her specialized skill set and access to certain AppLabs information was required in order to effectuate the integration. JA 451-52. However, Ms. Vargas was one of several individuals who with the skills and access required to assist in the integration. JA 125-126. More specifically, AppLabs' employee and personnel information that was necessary to process the integration was maintained electronically and in a database that was accessible by several other capable individuals. JA 126-27.

27.     Ms. Vargas was ultimately separated from employment effective April 12, 2013. JA 399.

28.     At or around the time Ms. Vargas was separated from employment, there were several open and available positions within Defendant, each of which Ms. Vargas was qualified to perform. JA 541.

29.     Moreover, during the integration and delayering process, several of Defendant's management-level employees expressly requested that Ms. Vargas be selected for open positions within their respective departments. JA 270, 272, 277-80. Ms. Vargas was rejected for each such position. *Id*.

## V.     Ms. Vargas' Complaint With the United States Department of Labor ("DOL").

30.     Following her termination, Ms. Vargas filed a complaint with the United States Department of Labor ("DOL"). Therein, Ms. Vargas alleged, *inter alia*, discrimination and retaliation based on her status as a protected veteran. JA 533-536.

31.     The DOL conducted a comprehensive investigation, which included obtaining statements from relevant employees and reviewing documents related to the delayering process, Ms. Vargas' termination and the availability of other positions within Defendant. JA 533-546.

32.     In relevant part, the DOL investigation revealed the following:

- As early as November 7, 2012, Ms. Vargas engaged in protected activity when she informed Archana Singh that she was a protected veteran. JA 539;
- Ms. Vargas informed Defendant's upper management of her status as a protected veteran "on a regular basis" during the integration process, including specific complaints about equal employment and obligations towards veterans; JA 540;
- During the integration and delayering process, Defendant advised all employees, including Ms. Vargas, that everyone within the organization was a candidate for a position at every level, and as such there was no need to apply for positions within the organization. JA 540; and
- Archana Singh stated that employee performance did not play a role in Defendant's decision-making process with respect to delayering. Conversely, Rich Taylor stated that only the top performers were selected for continued employment. JA 540.[8]
- Although Defendant claims Ms. Vargas' position was redundant, Defendant hired several external applicants for Human Resources positions, each of whom had qualifications similar to Ms. Vargas. JA 541.

---

[8] In any event, Rich Taylor confirmed to the DOL that Ms. Vargas' experience was such that she was qualified to perform the essential functions of various Human Resources positions that were available at or around the time of her termination. JA 541.

### VI.   Inconsistencies in Defendant's Purported Basis for Terminating Ms. Vargas.

33.    In summary fashion, Defendant offers the following in support of its proffered legitimate basis for terminating Ms. Vargas from employment:

- On or about October 19, 2012, Archana Singh ("Ms. Singh") selected Ms. Vargas to be laid off as part of Defendant's delayering process. JA 442-43.
- Despite selecting Ms. Vargas for lay-off, Ms. Singh placed her in the "talent pool" (thereby indicating that she was to be considered for other positions within Defendant). JA 443, 450-51.
- The decision to eliminate all employees in Ms. Vargas' level within the talent pool was made in mid-November, 2012. JA 441-42, 451.
- Individuals who were separated from employment by virtue of eliminating the talent pool were not eligible for rehire. JA 451
- Ms. Vargas was initially scheduled to be separated from employment on December 12, 2012. JA 451.
- Ms. Vargas's employment was extended beyond December 12, 2012, purportedly because her continued employment was necessary to effectuate the transition from AppLabs to Defendant. JA 451-52.

34.    Defendant's version of the *alleged* undisputed facts includes various material inconsistencies with respect to the decision-making process regarding Ms. Vargas' separation from employment, including the following:

- Defendant first claims that the decision to separate Ms. Vargas from employment was made by Archana Singh in October, 2012. However, Defendant goes on to claim that the decision to terminate Ms. Vargas was not formally made until it was the entire talent pool was eliminated. JA 441-43.
- While Defendant claims the decision to remove Ms. Vargas from her position rendered her ineligible for rehire, Defendant had Ms. Vargas submit an application for employment in February 18, 2013 (approximately two months *after* it was purportedly decided that she was to be removed from employment). JA 158-60, 380-84.[9]
- Defendant's contention that there were no available positions for which Ms. Vargas was qualified is contradicted by the record. Specifically, Ms. Vargas expressly stated that several individuals employed by Defendant had openings, and that she was specifically requested to fill said openings. JA 243, 255, 270, 272, 275-80.

---

[9] The fact that Defendant had Ms. Vargas fill out an application for employment after the alleged decision to include her among those to be separated from employment lends significant support to Ms. Vargas' assertion that she was assured she was going to remain employed by Defendant before she engaged in any protected activity.

- During the DOL investigation, Defendant's management-level employees offered contradictory statements with respect to the manner in which it was determined which employees would remain following the integration, *i.e.*, whether performance was taken into consideration. JA 540.
- Defendant claims Ms. Vargas was not formally terminated at the time the talent pool was eliminated because her continued employment was necessary in order to effectuate the integration. However, Ms. Vargas was one of several individuals who possessed the requisite skills and knowledge to assist in the integration. JA 125-27.

Respectfully Submitted,

Jonathan W. Chase, Esquire
**KRAEMER, MANES &**
**ASSOCIATES LLC**
PA ID: 312448
1515 Market Street
Suite 1200
Philadelphia, PA 19102
(215) 475 3504 Direct
(215) 734 2466 Fax
jwc@lawkm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHARON VARGAS | **:** | No. 2:15-cv-06741 |
| | **:** | |
| *Plaintiff,* | **:** | JURY TRIAL DEMANDED |
| | **:** | |
| COMPUTER SCIENCES | **:** | |
| CORPORATION | **:** | |
| | **:** | |
| *Defendant.* | **:** | |

**CERTIFICATE OF SERVICE**

I certify that on June 15, 2017, I caused a true and correct copy of the forgoing on all

counsel of record in this matter via the ECF system.

Jonathan W. Chase, Esquire
**KRAEMER, MANES &
ASSOCIATES LLC**
PA ID: 312448
1515 Market Street
Suite 1200
Philadelphia, PA 19102
(215) 475 3504 Direct
(215) 734 2466 Fax
jwc@lawkm.com